[Cite as *State v. Collins*, 2011-Ohio-3241.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95415

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LORENZO COLLINS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-482881

**BEFORE:**    Blackmon, P.J., Stewart, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**    June 30, 2011

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road
Suite 613
Cleveland Heights, Ohio 44118


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Pinkey S. Carr
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Appellant Lorenzo Collins ("Collins") appeals his convictions for felony murder, aggravated arson, and arson and assigns six errors for our review.[1]

{¶ 2} Having reviewed the record and pertinent law, we affirm Collins's convictions. The apposite facts follow.

---

[1]See appendix.

{¶ 3} This appeal concerns Collins's second trial. As a result of Collins's first appeal, this court found prejudicial error in comments made by the trial court and remanded the matter for a new trial. *State v. Collins*, Cuyahoga App. No. 89808, 2008-Ohio-3016. The new trial proceeded on the ten counts of which Collins was found guilty in the first trial. These counts included: four counts of felony murder, five counts of aggravated arson, and one count of arson.[2]

{¶ 4} A jury trial commenced on May 5, 2010. The testimony revealed that on April 4, 2006, sometime before 4:40 a.m., a fire broke out in an apartment building located at 1554 East 105th Street in Cleveland, Ohio. Four children, siblings under the age of 13, died of asphyxiation. Several people escaped from the burning building, including the children's two-year old sibling and mother, Raquel Stewart Hayes ("Hayes"). The evidence also showed that a 1999 two-door gold Monte Carlo parked several blocks away was set on fire.

{¶ 5} Detective Kerry Good of the Cleveland Fire Investigation Unit testified that the fire department was alerted to the fire around 4:40 a.m. The fire began on the second floor in the front entrance of an apartment

---

[2]After the first trial, the jury found Collins was not guilty of four counts of aggravated murder with the specifications of felony murder and victim under 13 years of age. Instead, the jury found him guilty of the lesser included offense of felony murder along with aggravated arson and arson.

owned by JR Grant. A flammable/combustible liquid had been poured in front of Grant's apartment, down the hallway, and partway down the stairs toward the entrance of the building. The liquid was then ignited with an open flame, starting the fire that killed the four children who lived on the third floor above Grant's apartment. Samples taken from the floor area tested positive for gasoline.

{¶ 6} Jamal Woods, a.k.a. January ("Woods"), testified that he and Collins did not get along because Woods had a relationship with Collins's girlfriend, Aneesa Williams ("Williams"), while Collins was in prison. When Collins was released from prison and discovered the relationship, he came to JR Grant's apartment and told Grant to tell Woods that he was looking for him. Woods did not live with Grant but admitted he sold drugs "six days a week" from Grant's apartment. From then on, Collins and Woods engaged in various verbal altercations.

{¶ 7} Several days before the fire, Woods was in the apartment and observed Collins drive by the apartment building a few times in a blue Saab. Woods told Grant he thought there was going to be trouble. That was the last time he saw Collins prior to the fire.

{¶ 8} On the day of the fire, Woods was in Grant's apartment until 2:00 a.m. He then received a ride home from his friend, Alfred Cole. After dropping Woods home, Cole proceeded to Winston's Bar located at East 131st

and Miles to pick up Williams, who was a bartender there. Cole left without Williams because Collins, who was at the bar, told him that he would be driving her home.

{¶ 9} Williams testified that as a result of her relationship with Collins she had three children. She stated that she and Collins were sent to jail for drugs. When they were released from jail, they discovered all of their belongings had been stolen from their apartment. She and Collins believed their neighbor had taken the property. However, when they confronted the neighbor, he denied taking anything. The neighbor drove the 2005 Monte Carlo that was set on fire the night of the apartment building fire.

{¶ 10} Collins was later returned to jail for a probation violation. While Collins was in jail, Williams began a relationship with Woods. Collins was released from prison in October 2005 and discovered the relationship. Collins threatened to take the children from Williams, but never acted on it. On the morning of the fire, Collins had come to the bar around 2:00 a.m. and told her he wanted her to come back home. She refused. After he left the bar, he repeatedly called Williams, but she refused to talk to him. Later that morning, she heard about the fire at the apartment building.

{¶ 11} Hearing he was a suspect in the fire, Collins voluntarily came to the police station where he gave a statement denying being involved. He claimed that he had been home with his girlfriend, Michelle Brown, until she

left at midnight, at which time he went to sleep. A review of Collins's cell phone records showed that he had made several calls from different locations in Cleveland, during and after the time of the fire, which contradicted his statement that he was home the entire night. The calls were made to the phone of the girlfriend of co-defendant Collin Bennett. The calls commenced around 2:30 a.m. from the area of the bar where Williams worked. Calls were also made between 3:30 a.m. and 4:30 a.m. in the vicinity of the apartment building. Video surveillance cameras also captured the image of two black males at approximately 3:14 a.m., approach the front of the apartment building. One of the men was carrying a jug that looked like an antifreeze jug. The video was of poor quality so it was impossible to identify the men.

{¶ 12} On June 13, 2006, co-defendant Bennett gave a voluntary statement to police in which he stated that he had been with Collins the night of the fire. When the police showed him the video, Bennett began to cry and identified himself and Collins as the men in the video. At trial, Bennett admitted that he and Collins drove to a gas station to purchase beer. When Bennett exited the store, he observed Collins filling an antifreeze jug with gasoline and place it on the back seat floor. Later that night they pulled into a parking lot located near the apartment building. Collins exited the vehicle and retrieved the jug of gas and told Bennett to walk with him. Bennett

than observed Collins enter the building carrying the jug and run out of the building a short time later. They then drove to East 114th Street and Ashbury, where Bennett saw Collins pour gasoline on the Monte Carlo and set it on fire. A few days after the fire, Collins approached Bennett and told him to keep his mouth shut.

{¶ 13} The jury found Collins guilty on all counts; the trial court sentenced him to an aggregate sentence of 111.5 years in prison, plus a total fine of $18,000.

## Denial of Motion to Suppress

{¶ 14} In his first assigned error, Collins argues the trial court erred by denying his motion to suppress the evidence of gasoline found on the back seat mats of the blue Saab.

{¶ 15} Appellate review of a suppression ruling involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. *Burnside.* The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.

{¶ 16} Collins was seen in a blue Saab on the night of the fire. When Collins's sister, Latoya, came to the police station in the blue Saab, the police ran the license plate. The information obtained indicated that Veronica May was the owner of the vehicle, not Collins. After Collins was arrested, the police impounded the vehicle and, after obtaining a warrant, tested it for traces of gasoline. The car's back seat mats tested positive for gasoline.

{¶ 17} Generally, non-owners of a vehicle do not have standing to object to the search and seizure of the vehicle. *Rakas v. Illinois* (1978), 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387. The Ohio Supreme Court, however, has recognized that a driver of an automobile who demonstrates that he has the owner's permission to use the vehicle has a reasonable expectation of privacy in the vehicle and standing to challenge its stop and search. *State v. Carter* (1994), 69 Ohio St.3d 57, 62, 1994-Ohio-343, 630 N.E.2d 355. At the suppression hearing, Collins testified that he had the owner's permission to use the vehicle. However, he did not have exclusive use of the car as several people in the neighborhood used the car. Regardless, the search was not unlawful because the officers did not search the vehicle until after they had obtained a search warrant.

{¶ 18} Thus, the only basis for challenging the search of the vehicle was the seizure of the vehicle prior to the search. While Collins contended at the suppression hearing that the car was parked in his driveway when it was

towed, in his suppression motion he stated the car was parked on the public street. Regardless of where the car was located when it was towed, the officers had probable cause to seize the vehicle. Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527. If there is probable cause to search a motor vehicle, it is reasonable under the Fourth Amendment for police to either seize the vehicle and hold it before presenting the probable cause issue to a magistrate or to carry out an immediate warrantless search. *Chambers v. Maroney* (1970), 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419. Prior to seizing the car, the officers had arrested Collins for setting the fire. They had also been told by several people that Collins was driving the blue Saab around the time of the fire. This knowledge was sufficient to warrant a belief that the vehicle contained evidence of Collins's involvement in the crime.

{¶ 19} Moreover, obtaining a warrant prior to seizing the vehicle would create delay. Given the fact the car could easily be moved and any evidence contained within destroyed, it was prudent for the officers to seize the vehicle. *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. The officers minimized the intrusion by waiting to search the car until after a

search warrant was obtained. Accordingly, Collins's first assigned error is overruled.

## Co-Defendant Testimony Instruction

{¶ 20} In his second assigned error, Collins argues that the trial court erred by failing to instruct the jury as to the value of a co-defendant's testimony as required pursuant to R.C. 2923.03(D).

{¶ 21} Our review of the record indicates the trial court gave the following instruction:

> **"An accomplice is someone who purposely assists another in the commission of a crime. Whether he was an accomplice and the weight to give his testimony are matters for you to determine from all of the facts and circumstances in the case.**
>
> **"The testimony of an accomplice that is supported by other evidence does not become inadmissible because of his complicity, his moral turpitude or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion and require that you weigh it with great caution.**
>
> **"So as with every other witness, it is for you, as jurors, in light of all the facts and circumstances presented, to determine any value of the weight of the witness and evaluate the witness and just determine what weight to give to his credibility."**

**{¶ 22}** This instruction is nearly identical to the language in R.C. 2923.03(D). Thus, the trial court properly instructed the jury as to the accomplice testimony. Accordingly, Collins's second assigned error is overruled.

### Manifest Weight of the Evidence

**{¶ 23}** In his third assigned error, Collins argues that his convictions were against the manifest weight of the evidence.

**{¶ 24}** In *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264,

**{¶ 25}** the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

**"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief.**

**Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive –– the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 26} However,  an appellate court may not merely substitute its view for that of the jury, but must find that the jury, in resolving conflicts in the evidence,  clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Thompkins*, supra at 387.  Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

**{¶ 27}** Collins argues his convictions are against the manifest weight of the evidence because Woods, Williams, and Bennett had a motive to lie. Thus, Collins is not arguing the testimony was contradictory, but that it was not credible. We defer to the jury as to whether the witnesses were credible because the jury is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying. See *Seasons Coal Co. v. Cleveland* (1994), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; *DeHass,* at 231. We conclude there is no reason to veer from this deference.

**{¶ 28}** Collins argues that Woods's testimony that Collins set the fire because he was jealous of Woods's relationship with Williams was not believable because Woods did not live at the apartment building. He contends that if he really wanted to hurt Woods, it would make more sense that he would set fire to Woods's house in Richmond Heights. However, Woods also testified that he sold drugs out of the apartment six days a week. In fact, the morning of the fire, Woods did not leave the apartment until approximately 2:00 a.m. There was also no evidence that Collins knew where Woods lived. Even Williams had never been to Collins's home because he lived with another woman.

**{¶ 29}** Collins also argues the fact that Woods was on the scene of the fire while the firemen were still putting out the fire indicated   he was nearby

when the fire started. However, Woods testified that he did not come to the scene until around noon after hearing about the fire on the news. When he arrived, detectives and fire investigators were still on the scene. Thus, he was not in the vicinity of the building at the time the fire started. Moreover, Woods had no motive to burn the apartment where his friend JR Grant lived and where he conducted his drug trafficking business.

{¶ 30} Collins argues that his ex-girlfriend Aneesa Williams had a motive to lie because she was in a custody battle with Collins regarding their children. However, as Williams stated, it had not evolved into a legal battle in the courts. Also, the jury was well aware of the couples' disagreement regarding custody. Moreover, Williams did not state that Collins started the fire. She simply testified that Collins became angry with her around 2:30 a.m. when she told him she would not return home with him. Her testimony was supported by Collins's cell phone records that showed he was in the area of the bar at that time.

{¶ 31} Collins argues the testimony of his co-defendant Collin Bennett was unreliable because he received a favorable plea bargain in exchange for his testimony. The jury was fully aware of the terms of his plea bargain with the state. Thus, it was within their province to decide whether Bennett was believable. Moreover, Bennett's testimony was supported by Collins's cell phone records showing he was in the vicinity of the apartment building.

Traces of gasoline were also found on the back floor mats of his car, and the video showed a man carrying an antifreeze jug walking towards the apartment building, just as Bennett had testified.

{¶ 32} Finally, Collins argues the most credible evidence was provided by Eugene Stewart, the owner of Winston's, who stated that Collins left the bar around 3:30 a.m. This would place Collins about 30 minutes away from the fire, which would not give him enough time to get to the apartment to set the fire. However, as Lieutenant Luge testified, the clocks were moved forward one hour for daylight savings time. Thus, it is possible Stewart did not take this into account in providing the time he saw Collins. Additionally, Collins's cell phone records contradicted his claim that he was home the entire night and placed him at Winston's Bar at 2:34 a.m. His cell phone records also placed him in the area of Ambleside Avenue, less than two miles from the crime scene, at 3:03 a.m. Records also indicated he was in the area of the crime scene between 3:30 and 4:30 a.m. Accordingly, Collins's third assigned error is overruled.

## Involuntary Manslaughter Instruction

{¶ 33} In this fourth assigned error, Collins argues that the trial court erred by  failing to instruct the jury on the lesser-included offense of involuntary manslaughter.

**{¶ 34}** We note that counsel failed to object to the trial court's failure to instruct on involuntary manslaughter; therefore, he has waived all errors except plain error regarding the instructions. Crim.R. 52(B). Plain error as to jury instructions is proven when the outcome of the trial would have been different but for the alleged error. *State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339. We conclude plain error did not occur.

**{¶ 35}** A charge on a lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Collins is correct that involuntary manslaughter is a lesser-included offense to felony murder. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶79. However, the evidence does not support a charge on involuntary manslaughter because the evidence did not support an acquittal as to the felony murder charges.

**{¶ 36}** Collins contends an instruction on involuntary manslaughter should have been given because he did not intend to kill the four victims. However, specific intent is not necessary for felony murder. Instead, the issue is whether the defendant had the requisite mental state for the underlying offense. *State v. Goldsmith*, Cuyahoga App. No. 90617, 2008-Ohio-5990.

{¶ 37} Pursuant to R.C. 2903.02(B), felony murder proscribes causing the death of another as a proximate result of committing an offense of violence that is a felony of the first or second degree. The predicate offense of violence to Collins's felony-murder charge was aggravated arson under R.C. 2909.02(A)(1), which is a first degree felony. R.C. 2909.02(A)(1) prohibits "knowingly * * * creating a substantial risk of serious physical harm to any person other than the offender." Pursuant to R.C. 2901.22(B), a person acts knowingly, "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 38} Collins's act of pouring gasoline inside the inhabited apartment building and then igniting it with an open flame certainly created the substantial risk of physical harm required to support the felony murder conviction. To argue that Collins was not aware that his conduct would cause serious physical harm defies reason. Thus, because Collins's actions satisfied the requisite intent for felony murder, there would be no basis for acquitting Collins of the greater offense of felony murder in favor of convicting him for the lesser-included offense of involuntary manslaughter. Accordingly, Collins was not prejudice by the trial court's failure to instruct on involuntary manslaughter. Collins's fourth assigned error is overruled.

**Reckless Homicide Instruction**

{¶ 39} In his fifth assigned error, Collins argues the trial court should have instructed the jury on the lesser-included offense of reckless homicide. Defense counsel requested at trial that the court instruct on reckless homicide because the four children were not the intended victims and the fire was lit with "heedless indifference to the consequences." Collins also argues the fact that some people in the building escaped the fire supported the reckless homicide charge.

{¶ 40} We agree that reckless homicide is a lesser included offense of felony murder. *State v. Watson,* Cuyahoga App. No. 87281, 2006-Ohio-5738; *State v. Hunter*, Cuyahoga App. No. 86048, 2006-Ohio-20; *State v. Jones*, Cuyahoga App. No. 80737, 2002-Ohio-6045. However, the trial court did not err by refusing to give the instruction.

{¶ 41} The difference between felony murder and reckless homicide is in the requisite mens rea. As noted earlier, one acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person acts recklessly, however, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C).

{¶ 42} The evidence showed that Collins set the apartment building on fire out of revenge because Woods stole his girlfriend while Collins was in

prison. The act of pouring the gasoline on the second floor and down the front stairs to prevent escape showed Collins was intent on killing Woods. Although he may not have intended to kill the children, his act of preventing an escape down the stairs showed he was aware his conduct would be lethal. The fact that people were able to escape by jumping out windows does not impact Collins's mental state because the fact he did not kill everyone in the building does not show he lacked an intent to cause substantial physical harm. Thus, because the evidence did not support an acquittal as to the felony murder charges, the trial court did not err by refusing to instruct on reckless homicide. Accordingly, Collin's fifth assigned error is overruled.

## Allied Offenses

{¶ 43} In his sixth assigned error, Collins argues the trial court erred by imposing consecutive sentences for the felony murder and aggravated arson counts because they are allied offenses. The state concedes that the aggravated arson charges merge into the felony murder charges pursuant to the Ohio Supreme Court decision in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

{¶ 44} We note that while the aggravated arson and felony murder counts merge, the separate counts as to each victim remain. Although Collins set one fire, he created a substantial risk of harm or injury to four children. See *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d

26, ¶48 (rejecting defendant's argument that he set only one fire and therefore committed only one arson; court held that defendant committed six counts of aggravated arson because defendant knowingly set a fire that created a substantial risk of serious harm or injury to six people).

{¶ 45} In light of the state's concession and the recent Ohio Supreme Court decision in *Johnson*, we sustain this argument and remand the case to the trial court to allow the state to elect which allied offense to pursue at resentencing. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph one of the syllabus; *State v. Pate,* Cuyahoga App. No. 94876, 2011-Ohio-1692; *State v. Bauldwin*, Cuyahoga App. No. 94876, 2011-Ohio-1066.

Judgment affirmed in part, reversed in part, and case remanded for further proceedings consistent with this opinion.

It is ordered that the parties share equally their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATRICIA ANN BLACKMON, PRESIDING JUDGE

MELODY J. STEWART, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR

## APPENDIX

### Assignments of Error

"I.   The court erred by denying Lorenzo Collins' motion to suppress the fruit garnered from the search of the Saab, as the search was illegal."

"II.   The court erred in neglecting to charge the jury with the necessary instruction relative to the value of the testimony of the co-defendant, Collins Bennett."

"III.   The jury decided this matter against the manifest weight of the evidence thereby creating a manifest miscarriage of justice."

"IV.   The court erred by not instructing the jury on involuntary manslaughter."

"V.   The court erred by not instructing the jury on reckless homicide."

"VI.   The trial court erred when it sentenced appellant to separate consecutive sentences when the alleged multiple counts all arose out of one act and one animus."