[Cite as *State v. Strong*, 2015-Ohio-169.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 100699

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DANA STRONG**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574995-A

**BEFORE:** E.A. Gallagher, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** January 22, 2015

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
4403 St. Clair Avenue
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: John Patrick Colan
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

ON RECONSIDERATION[1]

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Dana Strong appeals his convictions from the Cuyahoga County Court of Common Pleas. For the following reasons, we reverse.

{¶2} On June 11, 2013, appellant was charged in a five-count indictment with two counts of felonious assault, two counts of aggravated robbery, and one count of theft. Strong plead not guilty to all charges and the case proceeded to a jury trial.

{¶3} The facts of this case are that, on June 1, 2013, Strong entered the Unique Thrift Store at 3333 Lorain Avenue in Cleveland, Ohio. He was in the store approximately nine hours, during which time store employees noticed that the layers of clothing he was wearing were increasing. When Strong attempted to purchase a used book bag, he was confronted by Carlos Thompson, a store security guard. Thompson observed Strong wearing a shirt that had a price tag attached and asked him to go to the back of the store.

{¶4} During that confrontation, Strong removed a knife from his pocket and attempted to flee the store. Thompson reached out to take hold of Strong's left arm and, as Strong moved past Thompson, he slashed at Thompson's left arm several times with his right hand which acts were recorded by several security cameras in the store. Strong then ran into a line of shopping carts before fleeing from the store. As a result of the knife swipes, Thompson sustained injuries to his arm and finger necessitating 19 stitches and resulting in pain lasting for two to three weeks.

{¶5} Strong testified at trial that he felt that Thompson was "a loose cannon" and that he

---

[1] The announcement of decision *State v. Strong*, 8th Dist. Cuyahoga No. 100699, 2014-Ohio-4928, released September 25, 2014, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

brandished the knife toward him in order to "halt [Thompson's] advance." Strong's account was not supported by the security footage of the event.

**{¶6}** The jury returned a verdict of guilty on both counts of felonious assault and not guilty on the remaining charges. At sentencing, the trial court merged the two counts of felonious assault and imposed a prison term of two years. Strong appeals and his first assignment of error provides:

> The failure to instruct the jury on the lesser included offense of simple assault pursuant to R.C. 2903.13 (B) denied the appellant his federal and state constitutional rights to trial by jury and due process guaranteed by the sixth and fourteenth amendments as well as by Article I, Section 10 of the Ohio Constitution.

**{¶7}** A charge on a lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Collins*, 8th Dist. Cuyahoga No. 95415, 2011-Ohio-3241, ¶ 35, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (9th Dist.1988). The court must view the evidence in the light most favorable to the defendant when deciding whether to instruct the jury on a lesser included offense. *State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339. An instruction is not warranted, however, every time "some evidence is presented on a lesser included offense." *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992).

**{¶8}** A trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on a lesser included offense; we will not reverse that determination absent an abuse of discretion. *State v. Henderson*, 8th Dist. Cuyahoga No. 89377, 2008-Ohio-1631, ¶ 10, citing *State v. Wright*, 4th Dist. Scioto No. 01 CA2781, 2002-Ohio-1462.

**{¶9}** Assault under R.C. 2903.13(A) is a lesser included offense of felonious assault

under R.C. 2903.13.  *State v. Addison*, 8th Dist. Cuyahoga No. 96514, 2012-Ohio-260, ¶ 34, citing *State v. Caster*, 8th Dist. Cuyahoga No. 87783, 2006-Ohio-6594.

{¶10} Strong argues that a jury could have reasonably found that his actions, which resulted in serious physical harm to the victim, were reckless as required by R.C. 2903.13(B), rather than knowingly as required by R.C. 2903.11(A) and, therefore, he was entitled to an instruction on the lesser included offense.   We disagree.

{¶11} Strong testified that he removed the knife from his pocket because the victim was "a loose cannon" and that he brandished the knife while telling the victim not to advance toward him.   Even if we accepted Strong's self-serving account of the event, his testimony clearly demonstrated that he knowingly introduced the knife into the situation as a weapon. Furthermore, security camera footage from the scene of the incident shows Strong making deliberate slashing motions with his right arm, toward the victim's left arm on two occasions. These actions, and Strong's own testimony, are wholly inconsistent with the notion that Strong acted in any way other than knowingly.   A jury could not have reasonably found that Strong acted recklessly in this instance and, as such, he was not entitled to a lesser included offense instruction.   Strong's first assignment of error is overruled.

{¶12} Strong's second assignment of error states:

> The appellant was denied equal protection of law pursuant to the fourteenth
>
> amendment to the United States Constitution due to purposeful racial discrimination
>
> by the state in the jury selection process and failure of the trial court to follow
>
> applicable law.

{¶13} In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court recognized that the Equal Protection Clause of the United States

Constitution prohibits the use of peremptory challenges in a discriminatory manner to exclude potential jurors solely on account of their race. *Id.* at 89; *see also State v. Hernandez*, 63 Ohio St.3d 577, 581, 589 N.E.2d 1310 (1992).

{¶14} There are three steps involved in adjudicating a *Batson* claim. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge. However the "explanation need not rise to the level justifying exercise of a challenge for cause." Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination. *Batson* at 96-98. *See also Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous. *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992), following *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

{¶15} The record reflects that the jury panel consisted of 22 people of whom only two were African-Americans. Counsel for appellant objected to the compilation of the panel as being non-representative of the community. That objection was overruled.

{¶16} After counsel and the court conducted voir dire, the state moved to exercise a peremptory challenge of one of the two African-American jurors without posing any questions to him. This particular juror, upon questioning by defense counsel, was appropriately responsive and articulate.

{¶17} Strong objected to the state's peremptory strike of that juror and the trial court asked the state to provide its reasoning, to which the state responded:

> I don't know if you have been able to observe his demeanor. He's back in the corner, but it's a little concerning to me. He has an extremely wide-eyed look,

like he has a thousand-yard stare, and I have concerns that he will be able to pay attention.

{¶18} The trial court noted that it had *not* observed conduct by the juror consistent with the state's description but nonetheless accepted the challenge and overruled the objection without any further inquiry into the matter.

{¶19} We note that the record reflects that the juror in this instance was to be an alternate and the alternate juror who replaced him was not called upon to deliberate on the case. However, the juror's alternate status is irrelevant to a *Batson* analysis because "the harm inherent in a discriminatorily chosen jury inures not only to the defendant, but also to the jurors not selected because of their race, and to the integrity of the judicial system as a whole." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, quoting *United States v. Harris*, 192 F.3d 580, 587-588 (C.A.6, 1999); *see also State v. Thompson*, Slip Opinion No. 2014-Ohio-4751, ¶ 53 (Oct. 29, 2014) (holding that a trial court's error in applying *Batson* is a structural error and not subject to harmless-error review).

{¶20} This court has previously explained that in the third step of the *Batson* analysis, "the trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual." *State v. Hudson*, 8th Dist. Cuyahoga No. 96986, 2012-Ohio-1345, ¶ 11, quoting *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. "[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all   evidence with a bearing on it." *Frazier* at ¶ 65, quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).

{¶21} In the case before us, we are deeply troubled by both the state's proffered reason for the peremptory strike   and the lack of inquiry into the matter by the trial court in light of its

admission that it had not observed the supposed inattentiveness of the juror. The state's dubious explanation for its peremptory challenge — that based solely on the "wide-eyed" look on the juror's face, the juror could not be attentive — essentially amounts to an expression of displeasure with the physical characteristics of the juror. We find this explanation to be both offensive and disconcerting. Our interpretation is bolstered by the prosecutor's failure to make any inquiry of the juror before concluding the juror could not be attentive solely due to his appearance.

{¶22} The state cites this court's decision in *State v. Brown*, 8th Dist. Cuyahoga No. 84059, 2004-Ohio-6862, for the proposition that body language and demeanor are "permissible race-neutral justifications for the exercise of a peremptory challenge." In *Brown*, the state sought to dismiss a juror whose body language gave it the impression that he "doesn't like this case, he doesn't want to be here." *Id.* at ¶ 26. We noted that while passivity, inattentiveness, or inability to relate to other jurors are valid, race-neutral explanations for excluding jurors, such reasons for striking a juror are subjective, and thus virtually impossible for this court to review on appeal. *Id*. at ¶ 26. However, we further cautioned:

> This is not to say that any dismissal on grounds of body language is essentially unreviewable. The potential for abuse is always present and the courts have the obligation to state adequate reasons on the record for denying challenges under those circumstances. However, the attorneys must take steps to "develop the record concerning the specific behavior by venire members that motivated the peremptory challenge * * *"

*Id*. at ¶ 29.

{¶23} Here, both the trial court and the state failed to sufficiently develop the record or appropriately inquire into the concerns regarding this juror. In fact, it was not the juror's body language that was being questioned but his physical appearance. "[T]he state's failure to engage in any meaningful voir dire examination on a subject the state alleges it is concerned about is

evidence suggesting that the explanation is a sham and a pretext for discrimination." *Miller-El v. Dretke*, 545 U.S. 231, 246, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), quoting *Ex parte Travis*, 776 So.2d 874, 881 (Ala. 2000).

{¶24} In *State v. Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, this court, referencing *Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203, 170 L.Ed.2d 175 (2008), held that the trial court need not undertake specific fact-finding exercises prior to rejecting a *Batson* challenge and, further, *Snyder* held that a reviewing court should not give deference to a demeanor-based explanation when there is no indication in the record that the court relied on it in overruling the *Batson* challenge and the other reasons offered are proven to be pretext for discrimination. *Snyder* at 485-486.

{¶25} *Brown*, *Moseley* and even *Snyder* are distinguishable from the present case because in those cases the jury panel members whom the state sought to excuse were all questioned during the voir dire process by the prosecuting attorney and in each case it was apparent that the preemptory challenge exercised by the state was based on race-neutral reasoning.

{¶26} In this case, the court made initial inquiry of the juror at issue and counsel for the defense also questioned him. He answered the questions posed of him which were essentially of a biographical nature.

{¶27} We further explained in *Moseley* that although a trial court is not required to make an independent determination of a prospective juror's demeanor when such reason is offered as grounds for a peremptory challenge, *Snyder* recognizes that this is clearly the preferred practice. *Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, ¶ 38. We further noted that a silent record as to the trial judge's own observation of a prospective juror's demeanor may be grounds for reversal under certain circumstances. *Id.*

{¶28} Our decision in this case does not create any new duty for the trial court to investigate a juror's demeanor when that explanation is offered by the state. Instead, the fact that the trial court in this instance admitted that it had not observed the conduct complained of by the state was just one factor to be considered as context for the evaluation of the state's explanation. Of far greater importance to our conclusion is the nature of the prosecutor's explanation itself and the fact that the both the defense and the trial court previously questioned the juror and he answered questions appropriately.

{¶29} Even ignoring the lack of questioning on the matter by the state, the record is clear that the trial court failed to appropriately evaluate the context of the proffered reasoning under the third step of *Batson*. To the extent that the record touches upon this particular juror at all, it *refutes* the state's contentions. Prior to the peremptory challenge both the trial judge and Strong's attorney questioned the subject juror during voir dire. Such inquiry raised no concerns by the judge or Strong's counsel. In fact, the juror expressly indicated that he possessed no reservations about his ability to serve as a juror and represented that he would listen and pay close attention to the testimony. His responses were appropriate and articulate.

{¶30} On these facts we find that the trial court's decision to overrule Strong's objection to the peremptory challenge was clearly erroneous.

{¶31} Strong's second assignment of error is sustained.

{¶32} Strong's third assignment of error is moot.

{¶33} We note that a reversal under *Batson* "does not mean that a guilty defendant must go free. For indictments can be returned and convictions can be obtained by juries selected as the Constitution commands." *Patton v. Mississippi*, 332 U.S. 463, 469, 68 S.Ct. 184, 92 L.Ed. 76 (1947), citing *Hill v. Texas*, 316 U.S. 400, 406, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); *State v.*

*Russell*, 2d Dist. Montgomery No. 25467, 2013-Ohio-5166, ¶ 6; *Winston v. Boatwright*, 649 F.3d 618 (7th Cir. 2011) ("[W]hen a violation of equal protection in jury selection has been proven, the remedy is a new trial, without the need for any inquiry into harmless error or examination of the empaneled jury.")

**{¶34}** The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., CONCURS;
KENNETH A. ROCCO, J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED OPINION)


KENNETH A. ROCCO, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶35}** While I concur with the majority opinion's disposition of Strong's first assignment of error, I respectfully dissent from the majority opinion's disposition of Strong's second assignment of error. I would overrule it and, based upon my belief that Strong's third assignment of error also lacks merit, I would affirm his convictions.

**{¶36}** In his second assignment of error, Strong asserts that the trial court acted improperly in rejecting his argument during voir dire, made pursuant to *Batson v. Kentucky*, 476 U.S. 79

(1986), that the state was impermissibly excluding black jurors from serving at his trial. In my review of the record, I find this assertion groundless.

{¶37} In order to make a successful *Batson* claim, Strong was required first to establish "a prima facie case of discrimination." The state was not responsible for the fact that the jury panel consisted of only two African-Americans.

{¶38} Moreover, the state used one peremptory strike to excuse Juror No. 20 from service. One peremptory strike does not create an inference of purposeful exclusion on account of race. *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 99, 676 N.E.2d 872 (1997).

{¶39} The Supreme Court further stated the following in *Hicks*:

Review of a *Batson* claim largely hinges on issues of credibility. Accordingly, we ordinarily defer to the findings of the trial court. See *Batson* at 98, 106 S. Ct. at 1724, 90 L. Ed. 2d at 89, fn. 21. Whether a party intended to racially discriminate in challenging potential jurors is a question of fact, and *in the absence of clear error, we will not reverse the trial court's determination*. *Hernandez v. New York*, 500 U.S. at 369, 111 S. Ct. at 1871, 114 L. Ed. 2d at 412; *State v. Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d at 1314. Trial judges, in supervising voir dire, are best equipped to resolve discrimination claims in jury selection, because those issues turn largely on *evaluations of credibility*. See *Batson* at 98, 106 S. Ct. at 1724, 90 L. Ed. 2d at 89, fn. 21.

{¶40} In this case, the state offered a race-neutral explanation, i.e., that the juror exhibited a demeanor that included a "thousand yard stare." That term is perhaps unfamiliar to many people, but, according to the Oxford Dictionaries, means "a vacant or unfocused gaze into the distance, seen as characteristic of a war-weary or traumatized soldier." See www.oxforddictionaries.com/us/definitions. (Accessed September 10, 2014.)

{¶41} Jury selection is a lengthy process, as is a trial. When defense counsel protested about the prosecutor's peremptory strike, the prosecutor presented a race-neutral reason; he was concerned that the juror "will be able to pay attention" throughout the proceeding. Such a concern would have been proper if defense counsel had expressed it, as well.

{¶42} The majority opinion faults the trial court for focusing on each individual as he or she was questioned, but counsel had the opportunity to watch the other potential members of the panel during the voir dire. Under the circumstances presented in this case, I believe that the trial court acted within its prerogative to assess the prosecutor's credibility and accept that explanation. This court should not second guess the trial court's decision. Therefore, I would overrule Strong's second assignment of error.

{¶43} In addition, as outlined by the majority opinion's description of the facts of the case, I believe the manifest weight of the evidence also supports Strong's convictions. I would accordingly affirm them.