[Cite as *State v. May*, 2015-Ohio-4275.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102482**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## THOMAS MAY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589961-A

**BEFORE:** E.A. Gallagher, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 15, 2015

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, 2nd Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Frank Romeo Zeleznikar
        John Hirschauer
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant Thomas May appeals his conviction for assault of a corrections officer. May contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. He also contends that he was denied effective assistance of counsel because counsel failed to request a self-defense jury instruction and stipulated to facts establishing venue and certain elements of the offense. He further contends that the trial court erred in allowing the state to use peremptory challenges to excuse two prospective jurors who were racial minorities from the jury and in giving a *Howard* charge near the end of the day during jury deliberation. Finding no merit to his appeal, we affirm May's conviction.

**Factual and Procedural Background**

**{¶2}** May's conviction arose out of a September 15, 2014 altercation with a corrections officer while May was an inmate in the Cuyahoga County jail.

**{¶3}** On October 7, 2014, a Cuyahoga County Grand Jury indicted May on a single count of assault in violation of R.C. 2903.13(A). The indictment also included a specification pursuant to R.C. 2903.13(C)(4)(a) (the "furthermore specification") as follows:

> FURTHERMORE, offense was committed in or on the grounds of a local correctional facility, the victim of the offense was an employee of the local correctional facility or a probation department or is on the premises of the facility for business purposes or as a visitor, and the offense was committed

by a person who was under custody in the facility subsequent to the person's arrest for any crime or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child.

May pled not guilty, and the case proceeded to a jury trial.

{¶4} The state presented testimony from three witnesses who provided the following account of the incident that led to May's conviction. Julius Keyes, a corrections officer with the Cuyahoga County Sheriff's Department, testified that on September 15, 2014 he was working as "jail security" in the intake pod — the area of the jail in which new inmates are housed temporarily while they are booked and processed — overseeing the "med pass." Keyes explained that certain prisoners in the intake pod require medication and that it was his job to maintain order and protect Mary Kissling, the nurse on duty that day, as she was administering medicine to the prisoners from a medication cart in the hall outside the intake pod. Keyes testified that when he oversees the "med pass," he is given a list of the prisoners requiring medication. He notifies each inmate on the list that it is time for the inmate to receive his or her medication and requires them to "come fully dressed" and line up near the doorway of the intake pod behind a line approximately 15 feet from the medication cart. Keyes testified that the nurse stands behind the medication cart. Once the inmates are lined up, he stands beside the nurse and calls the prisoners to come forward, one at a time, to receive their medication. In turn, each inmate steps out into the hall to the medication cart, states his

or her name and shows the nurse his or her armband. After the nurse verifies the inmate's identity based on the armband, he or she administers whatever medication is prescribed for the inmate based on the information in the nurse's chart. A mouth check is performed to ensure that the inmate has swallowed the medication. The inmate then steps away from the cart and the next inmate is called forward to receive his or her medication.

{¶5} Keyes testified that on the morning at issue, he had instructed May to come fully dressed to the medication cart and to stand behind the line and wait his turn to receive his medication. May, however, was "noncompliant." Keyes testified that May stepped over the line and "had his shirt outside, halfway on, one sleeve in." Keyes testified that he told May to tuck in his shirt and wait his turn. Keyes testified that when it was May's turn to receive his medication, May walked up to the medication cart and confirmed his identity. As Kissling gave May his medication, he "mumble[d] something." Keyes testified that he told May "just take your meds and go." May started to walk away, but then turned around and "head-butted" Keyes. Keyes testified that he "almost lost consciousness for a minute" but grabbed May's arm, pulled him to the ground and restrained him. "[W]ithin a couple of seconds," a team arrived to assist, and they took over. Keyes was taken to the hospital. He testified that his forehead was cut and bleeding and that he had had a headache and felt dizzy.

{¶6} Kissling, an LPN with the Cuyahoga County Sheriff's Department, testified that for the past 18 and one-half years she has worked primarily on the medication cart in

the jail. She testified that on the morning of September 15, 2014, she gave Keyes a list of inmates in the intake pod who were scheduled to receive medication, that Keyes called the inmates on the list and lined them up and that, one-by-one, the inmates came out of the intake pod to receive their medication and then returned to the intake pod. Kissling testified that at approximately 9:00 a.m., when ten or so inmates were still in line to receive their medication, May came out of the intake pod into the hallway. She testified that, instead of walking to the medication cart to receive his medication, May "charged right towards [Keyes]" and "was physical with him." She testified that the two men were "like interlocked together" and "kind of hunched over" and that May "was hitting [Keyes] some" as Keyes was "trying to extricate himself from * * * being all * * * engulfed by the inmate." Kissling testified that she had been instructed to lock up the medication cart and to get away from the scene if anything happened and that she immediately began to do so. As she pulled the medication cart away, Keyes and May "went down to the floor" and other corrections officers started coming over to assist. Kissling testified that she observed the two men engaged in aggressive physical contact for 15 to 20 seconds before she locked up the medication cart. As to whether she saw May "head-butt" Keyes, Kissling testified that she "really wasn't analyzing the type of physical interaction" and "didn't really try to figure out what kind of punch" it was except to observe that it was "aggressive physical interaction."

{¶7} Steven Boardman, a corporal employed by the Cuyahoga County Sheriff's Department, testified that he was in his office in the jail with Corporal Miller when he

was alerted to a disturbance in the hallway. He testified that, as he exited his office, he saw Keyes involved in an altercation with May and saw Kissling pulling the medication cart away from the area. He testified that Keyes was behind May and had secured him to the floor in an arm hold. Corporal Boardman testified that he and Corporal Miller assisted Keyes in securing May. Corporal Boardman held May's left arm and Corporal Miller held May's right arm as May lay face down in the pod. Corporal Boardman testified that he ordered May "to give up and to stop resisting" but that May "would not give up his arms" and "kept flailing around, trying to turn over and face [the officers]." Corporal Boardman, therefore, sprayed May in the face with pepper spray. May thereafter "became more compliant" and allowed the officers to handcuff him. Corporal Boardman testified that he did not personally observe the altercation between May and Keyes.

{¶8} Although there were video cameras throughout the jail, none of them captured the incident. Keyes testified that corrections officers did not wear body cameras. Corporal Boardman testified that he was wearing a body camera on the day of the incident but did not have time to activate it until after May was secured.

{¶9} At the close of the state's case, May moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. No witnesses testified on behalf of the defense.

{¶10} After the defense rested, May renewed his Crim.R. 29 motion for acquittal, arguing, once again, that the state failed to present sufficient evidence to meet its burden of proving beyond a reasonable doubt that May committed the offense. May also argued

that venue had not been established. The trial court again denied the motion and the case went to the jury.

{¶11} The parties stipulated that (1) the alleged offense was committed in or on the grounds of a local correctional facility as defined in R.C. 2903.13, (2) the alleged victim, Keyes, was an employee of a local correctional facility as defined in R.C. 2903.13 and (3) the alleged offense was committed by a person who was under custody in the facility subsequent to that person's arrest for any crime as defined in R.C. 2903.13.

{¶12} After the jury had been deliberating for several hours, it submitted a note with the following question to the trial court: "If we don't feel like we can come to an unanimous decision, what happens next?" The trial court gave the jury a supplemental instruction based on *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), then indicated on the note it received from the jury, "12/10/14 @ 4:30 Howard Charge on Record." Five minutes later, the jury returned a guilty verdict on the assault count as charged in the indictment. The trial court thereafter sentenced May to one year in prison, concurrent to the three-year sentence imposed in Case No. CR-570449, and postrelease control for up to three years.

{¶13} This appeal followed. May has raised the following six assignments of error for review:

> Assignment of Error I:
> The state failed to present sufficient evidence to establish venue.
>
> Assignment of Error II:
> The state presented insufficient evidence of felony assault.

Assignment of Error III:
The manifest weight of the evidence did not support appellant's conviction for assault.

Assignment of Error IV:
Defense counsel provided ineffective assistance by failing to request a self-defense instruction and in stipulating to unproven facts and jurisdiction.

Assignment of Error V:
The trial court erred when it overruled defendant's challenge to state removal of minority jurors.

Assignment of Error VI:
The trial court erred in giving a Howard instruction minutes before the end of the day, resulting in a verdict five minutes after the instruction had been giv[en].

## Law and Analysis

### Sufficiency of the Evidence

{¶14} In his first two assignments of error, May challenges the sufficiency of the evidence relating to venue and the "elements of felony assault." May argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because "the State failed to elicit a city, county, or state where the alleged crimes occurred" and "[n]o witness testified to the address of the jail." May also contends that his conviction should be vacated because the state failed to prove that the offense occurred on the grounds of a "local correctional facility" as defined in R.C. 2903.13(D)(4) — an element necessary to elevate the offense from misdemeanor assault to felonious assault under R.C. 2903.13(C)(1).

{¶15} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, ¶ 21. Accordingly, we review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the-evidence claim. *Id.* at ¶ 21-23 ("Crim.R. 29(A) and sufficiency of evidence review require the same analysis."), citing *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571.

{¶16} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v.*

*Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins, supra*; *Jenks* at paragraph two of the syllabus.

{¶17} May was convicted of assault in violation of R.C. 2903.13(A) along with a furthermore specification pursuant to R.C. 2903.13(C)(4)(a). R.C. 2903.13(A), assault, provides, in relevant part:

No person shall knowingly cause or attempt to cause physical harm to another * * * .

{¶18} Assault is fifth-degree felony where certain specifications apply. R.C. 2903.13(C)(4)(a) provides, in relevant part:

If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree * * * [t]he offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility * * *, and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child.

{¶19} "Local correctional facility" is defined as

a county, multicounty, municipal, municipal-county, or multicounty-municipal jail or workhouse, a minimum security jail established under section 341.23 or 753.21 of the Revised Code, or another county, multicounty, municipal, municipal-county, or multicounty-municipal facility used for the custody of persons arrested for any crime or delinquent act, persons charged with or convicted of any crime, or persons alleged to be or adjudicated a delinquent child.

R.C. 2903.13(D)(4).

{¶20} Venue refers to the proper place in which to try a criminal matter. Under Article I, Section 10 of the Ohio Constitution and R.C. 2901.12, "evidence of proper

venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. Article I, Section 10 of the Ohio Constitution provides, in relevant part: "In any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Former R.C. 2901.12(A)[1] provides: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element thereof was committed."

{¶21} Venue is not a material element of an offense charged, but it is, nevertheless, a fact the state must prove beyond a reasonable doubt in a criminal prosecution unless it is waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983), citing *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). "'A conviction may not be had in a criminal case where the proof fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned.'" *Hampton* at ¶ 19, quoting *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus.

{¶22} May argues that the trial court erred in denying his Crim.R. 29 motion for acquittal on venue grounds because "the State failed to elicit a city, county, or state where

---

[1]Effective March 23, 2015, R.C. 2901.12(A) was amended to state: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and, except in cases of emergency under section 1901.028, 1907.04, 2301.04, or 2501.20 of the Revised Code, in the territory of which the offense or any element of the offense was committed."

the alleged crimes occurred" and "[n]o witness testified to the address of the jail." However, venue does not need to be proven in express terms, but rather, can be established by the totality of facts and circumstances of the case. *State v. Price,* 7th Dist. Mahoning No. 14 MA 28, 2015-Ohio-1199, ¶ 36, citing *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000); *Headley* at 477; *Hampton* at ¶ 19 ("'it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment'"), quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.

{¶23} Upon reviewing the entire record in this case, we find that the state presented sufficient evidence to establish Cuyahoga County as the proper venue for the case and that the crime at issue occurred in a "local correctional facility" in Cuyahoga County. Keyes testified that he was employed as a corrections officer by the Cuyahoga County Sheriff's Department, that he worked in "jail security" for the Cuyahoga County Sheriff's Department and that he was working in the jail on September 15, 2014 when he was assaulted by May, an inmate in the facility. Kissling and Corporal Boardman similarly testified that they were employed by the Cuyahoga County Sheriff's Department, that they worked in the jail and that they were working in the jail at the time the incident occurred. There was no evidence that the incident occurred outside Cuyahoga County, Ohio. Based on this testimony, it could be reasonably determined beyond a reasonable doubt that (1) the crime at issue occurred in the Cuyahoga County

jail located in Cuyahoga County and (2) the jail was a "local correctional facility" as defined in R.C. 2903.13(D)(4), i.e., "a county * * * jail * * * used for the custody of persons arrested for any crime or delinquent act [or] persons charged with or convicted of any crime * * *."

{¶24} Venue may be established by circumstantial evidence. *See, e.g., Price* at ¶ 2. It was not necessary, as May contends, for the state to specifically ask one of the witnesses if the jail was run by the state or the county. *See, e.g., State v. Wheat*, 10th Dist. Franklin No. 05AP-30, 2005-Ohio-6958, ¶ 10, 13 (although no witness testified that offenses at issue occurred in Franklin County, state presented sufficient circumstantial evidence as to the location of the crime to establish venue); *State v. Martin,* 10th Dist. Franklin Nos. 02AP-33 and 02AP-34, 2002-Ohio-4769, ¶ 27-30 (where there was no direct testimony that offense at issue occurred in Franklin County, sufficient circumstantial evidence existed to establish venue based on testimony of responding police officer that he was employed by the city of Columbus, assigned to the Franklinton area and dispatched to a specific address in the area and video that showed that location of offense was in an urban setting and there was no evidence to suggest that the offense occurred outside Franklin County); *State v. Norton,* 2d Dist. Greene No. 97 CA 112, 1998 Ohio App. LEXIS 5872, *18-21 (Dec. 11, 1998) (evidence that officers employed by the Greene County Sheriff's Department investigated a burglary committed in Bath Township was sufficient to prove venue in Greene County). Because the state presented sufficient evidence of venue and the location of the offense for the case to be properly considered by the jury, the trial court did not err in denying May's Crim.R. 29 motion. May's first and second assignments of error are overruled.

**Manifest Weight of the Evidence**

{¶25} In his third assignment of error, May argues that his assault conviction was against the manifest weight of the evidence due to inconsistencies between the testimony of Keyes and Kissling as to whether May "head-butted" Keyes. May claims that "[w]ithout a head-butt," the struggle between Keyes and May could not have "directly cause[d] Keyes'[s] injury" and that the injury must have been caused by "the response of other officers * * * after they swarmed on the scene." May further argues that because

Kissling testified that "she did not see [May] head-butt Keyes," "serious doubt" exists as to whether May committed the offense.

{¶26} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses'

manner, demeanor, gestures and voice inflections, in determining whether the proffered testimony is credible. *State v. Holloway,* 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin, supra*.

{¶27} We find no merit to May's assertion that the jury's verdict was against the manifest weight of the evidence. There are admittedly some inconsistencies between Keyes's and Kissling's testimony in this case. However, a conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent or contradictory testimony. *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11; *see also State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37 ("'While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'"), quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, *7 (May 28, 1996). The decision whether, and to what extent, to believe the testimony of a particular witness is "within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54.

**{¶28}** Although Kissling did not testify to seeing May "head butt" Keyes, she testified that she saw May "charge towards" Keyes and become "physical with him," hitting him. She further explained that she "really wasn't analyzing the type of physical interaction" and "didn't really try to figure out" what kind of physical interaction it was other than to observe that it was "aggressive physical interaction." Whether May "head butted" Keyes or engaged in some other type of physical contact with Keyes, both witnesses testified consistently that May, unprovoked by any conduct by Keyes, came at Keyes and made physical contact with him. Keyes further testified that, as a result of the altercation, he sustained a physical injury, i.e., a laceration to his forehead as well as a headache and dizziness. The testimony of Keyes and Kissling constituted competent, credible evidence that May, by his actions, "knowingly cause[d] or attempt[ed] to cause physical harm" to Keyes. R.C. 2903.13(A). There is nothing in the record to support May's claim that Keyes's injury must have been caused by "the response of other officers * * * after they swarmed on the scene."

**{¶29}** Following our review of the record in this case, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that May's assault conviction was against the manifest weight of the evidence. Accordingly, May's third assignment of error is overruled.

**Ineffective Assistance of Counsel**

**{¶30}** In his fourth assignment of error, May contends that his trial counsel provided ineffective assistance by (1) failing to request a self-defense jury instruction and

(2) stipulating to venue and the facts underlying the furthermore specification that elevated the offense to a felony.

**{¶31}** A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland* at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶32}** Because there are "countless ways to provide effective assistance in any given case," judicial scrutiny of a lawyer's performance must be "highly deferential." *Id.* at 689. "'[D]ecisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers.'" *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 6, quoting *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18; *see also State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101 ("debatable trial tactics" do not constitute ineffective assistance of counsel). A reviewing court, therefore, "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 689. May has not met his burden in this case.

### Failure to Request a Self-Defense Instruction

{¶33} May first contends that his trial counsel was ineffective because he failed to request a jury instruction on self-defense. Under Ohio law, self-defense is an affirmative defense. *State v. Martin*, 21 Ohio St.3d 91, 93, 488 N.E.2d 166 (1986). A defendant is entitled to a jury instruction on an affirmative defense only if the defendant presents sufficient evidence which, if believed, "would raise a question in the minds of reasonable people concerning the existence of that defense." *State v. Porozynski*, 8th Dist. Cuyahoga No. 93827, 2010-Ohio-5122, ¶ 23, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus; *see also State v. Tuggle,* 6th Dist. Lucas No. L-09-1317, 2010-Ohio-4162, ¶ 69.

{¶34} To establish self-defense, a defendant must prove by a preponderance of the evidence that he (1) was not at fault in creating the situation giving rise to the fight; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was through the use of force; and (3) did not violate any duty to retreat or avoid the danger. *State v. Hill*, 8th Dist. Cuyahoga No. 98633, 2013-Ohio-578, ¶ 44, citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. In this case, no evidence was presented at trial upon

which the jury could have reasonably found that May acted in self-defense. May did not call any witnesses and did not take the stand in his defense. There was no evidence that May was not at fault for the incident or that he had a bona fide belief that he was in imminent danger and that his only means of escape was to use force. Rather, Keyes and Kissling testified unequivocally that May was the unprovoked aggressor in the incident. Corporal Boardman, the only other witness to testify, did not observe the incident.

{¶35} Trial counsel cannot be deemed ineffective for failing to perform a futile act. *See, e.g., State v. Witherspoon,* 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 33 ("the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial"). Had May's trial counsel requested a jury instruction on self-defense, his request would have no doubt been denied. A trial court "as a matter of law, cannot give a jury instruction on an affirmative defense" if the defendant fails to present sufficient evidence to support the affirmative defense. *State v. Stoutemire*, 8th Dist. Cuyahoga No. 94802, 2011-Ohio-473, ¶ 38. Where, as here, the record contains no evidence that would support a self-defense instruction, the defendant cannot meet his burden of establishing that he was denied effective assistance of counsel based on counsel's failure to request a self-defense instruction. *See, e.g., Hill* at ¶ 42-45 (defense counsel did not err in not requesting a jury instruction regarding self-defense where there was no evidence to support the instruction); *State v. Tabasso,* 8th Dist. Cuyahoga No. 98248, 2012-Ohio-5747, ¶ 25 (where defendant failed to meet his burden to show evidence of possible self-defense, such that trial court had no basis to give an instruction

on self-defense even if defense counsel had requested it, defense counsel's performance was not deficient); *Stoutemire* at ¶ 43 (where there was insufficient evidence to merit a request for a jury instruction on self-defense, defendant failed to establish that his counsel's performance, in failing to request such an instruction, fell below an objective standard of reasonableness or prejudiced his ability to receive a fair trial).

### Trial Counsel's Stipulations

{¶36} May also contends that his trial counsel was ineffective because he stipulated to two "unproven facts" — venue and that the offense occurred on the grounds of a "local correctional facility" — "before moving to dismiss based on these very same facts." May contends that by stipulating to these facts after the close of the state's case, defense counsel gave up a "distinct advantage" May would have otherwise had based on the state's failure to prove these facts, thereby prejudicing him. We disagree.

{¶37} The record reflects that the parties stipulated to the elements of the furthermore specification, i.e., (1) that the alleged offense was committed in or on the grounds of a local correctional facility as defined in R.C. 2903.13, (2) that the alleged victim, Keyes, was an employee of a local correctional facility as defined in R.C. 2903.13 and (3) that the alleged offense was committed by a person who was under custody in the facility subsequent to that person's arrest for any crime as defined in R.C. 2903.13. However, it is not clear from the record precisely when the parties agreed to stipulate to these facts. It is likewise unclear from the record whether, in fact, defense counsel ever

stipulated to venue. The discussion of the stipulations that appears in the record occurs after May made his initial Crim.R. 29 motion.

{¶38} Moreover, May never moved to dismiss the case based on the state's alleged failure to prove the offense occurred on the grounds of a "local correctional facility." In his initial motion to dismiss May argued only that, due to inconsistencies in the witnesses' testimony, the state failed to meet its burden of proof beyond a reasonable doubt that May caused or attempted to cause physical harm to Keyes. In his renewed motion to dismiss, May argued that the state had failed to carry its burden of proving that May "committed this offense beyond a reasonable doubt" and had failed to establish venue.

{¶39} "Generally, the decision to enter into stipulations is a tactical decision that "falls 'within the wide range of reasonable professional assistance.'" *State v. Hammen*, 5th Dist. Stark No. 2012CA00009, 2012-Ohio-3628, ¶ 16, quoting *State v. James*, 3d Dist. Allen No. 1-10-20, 2010-Ohio-5411, ¶ 16. Trial counsel's decision to stipulate to uncontested facts constitutes ineffective assistance only if it results in prejudice to appellant. *Hammen* at ¶ 16.

{¶40} May has not shown that he was prejudiced by trial counsel's decision to enter into the stipulations at issue, i.e., that the result of the trial would have been different absent the stipulations. As stated above, the state presented sufficient evidence, separate and apart from the stipulations, to establish that Cuyahoga County was the proper venue for this criminal action and that the offense at issue was committed in a

"local correctional facility" as defined in R.C. 2903.13(D)(4). May does not identify any evidence he contends counsel could or should have presented to disprove these elements of the offense. Accordingly, trial counsel's use of stipulations was a legitimate tactical decision that does not constitute ineffective assistance of counsel.

{¶41} As May has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced by such performance, his fourth assignment or error is meritless and is overruled.

**Use of Peremptory Challenges in Jury Selection**

{¶42} In his fifth assignment of error, May argues that the prosecutor's peremptory challenges of two prospective jurors — the only African-American in the venire and a prospective juror whom defense counsel maintained was Japanese-American — violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the trial court, therefore, erred in overruling his objections to the state's peremptory challenges.

{¶43} In *Batson*, the United States Supreme Court recognized that the Equal Protection Clause of the United States Constitution prohibits the use of peremptory challenges in a discriminatory manner to exclude potential jurors solely on account of their race. *Id.* at 89; *see also State v. Hernandez*, 63 Ohio St.3d 577, 581, 589 N.E.2d 1310 (1992). A three-step test is applied in adjudicating an alleged *Batson* violation.

*State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 50. First, a defendant must make a "'prima facie case of racial discrimination.'" *Id.* at ¶ 50, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 106. The

defendant must show that the prosecutor used peremptory challenges to remove from the venire members of a cognizable racial group and that the facts and other relevant circumstance raise an inference that the use of the peremptory challenges was racially motivated. *State v. Johnson*, 88 Ohio St.3d 95, 116, 723 N.E.2d 1054 (2000), citing *State v. Hill*, 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271 (1995).

{¶44} If the defendant satisfies that burden, then the burden shifts to the state to provide a race-neutral explanation for the use of the peremptory challenges. *Thompson* at ¶ 51, citing *Batson* at 97. At step two of the inquiry, the issue is the "'facial validity of the * * * explanation'" offered for seeking to excuse the jurors. *Thompson* at ¶ 51, quoting *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). "Although it is not enough to simply deny a discriminatory motive or assert good faith * * *, the 'explanation need not rise to the level justifying exercise of a challenge for cause.'" *Thompson* at ¶ 51, quoting *Batson* at 97. "Unless a discriminatory interest is inherent in the * * * explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), quoting *Hernandez* at 360.

{¶45} Finally, in step three, the court "'must examine the prosecutor's [peremptory] challenges in context to ensure that the reason is not merely pretextual.'" *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 63, quoting *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. The trial court must decide "'based on all the circumstances,'" whether the defendant has proved

purposeful racial discrimination. *Thompson* at ¶ 52, citing *Bryan* at ¶ 106, and *Batson* at 98. As the Ohio Supreme Court explained in *Thompson*:

> The court must "assess the plausibility of" the prosecutor's reason for striking the juror "in light of all evidence with a bearing on it." *Miller-El v. Dretke*, 545 U.S. 231, 252, 125 S.Ct. 2317, 162 L.E.2d 196 (2005). Relevant factors may include "the prosecutor's demeanor; * * * how reasonable, or how improbable, the explanations are; and * * * whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor * * *, making the trial court's firsthand observations of even greater importance." *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).

*Thompson* at ¶ 52. The burden of persuasion always stays with the opponent of the strike. *State v. White*, 85 Ohio St.3d 433, 437, 709 N.E.2d 140 (1999), citing *Purkett* at 768. A trial court's determination that the state did not possess discriminatory intent in the exercise of its peremptory challenges will not be reversed on appeal unless it was clearly erroneous. *State v. Strong,* 8th Dist. Cuyahoga No. 100699, 2015-Ohio-169, ¶ 14, citing *Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d 1310.

{¶46} In this case, May raised two *Batson* challenges. He raised a *Batson* challenge to the state's use of its first peremptory challenge to excuse prospective juror No. 5, the only African-American in the venire. Although the trial court questioned whether May had established a prima facie case of racial discrimination given that prospective juror No. 5 was the first prospective juror to be excused and, therefore, no "pattern" of excusing jurors of a particular race had been established, the trial court nevertheless asked the state to provide a race-neutral explanation for its decision to

excuse prospective juror No. 5.  The state gave two reasons.  First, it indicated that the prospective juror had a family member who had been in prison.  Second, the state indicated that the prospective juror had a son "in the age range of the defendant" and might "identify with her son as the defendant."  The trial judge accepted the state's race-neutral explanation, found it to be non-pretextual and overruled May's objection.

{¶47} After May exercised a peremptory challenge to excuse prospective juror No. 1, the state then used its second peremptory challenge to excuse prospective juror No. 6.  Once again, May raised a *Batson* challenge, arguing that prospective juror No. 6 was the only other "ethnic minority" on the panel.  There is nothing in the record indicating the race or ethnicity of prospective juror No. 6; however, defense counsel claimed, based on her last name and physical appearance, that prospective juror No. 6 was Japanese-American.  Although the trial judge did not agree that prospective juror no. 6 "appears to be a member of any cognizable racial group" and disputed May's claim that racial discrimination could be established based on assumptions regarding a prospective juror's ethnicity, she nevertheless asked the state to explain why it had chosen to excuse prospective juror No. 6.  The state offered three reasons.  First, prospective juror No. 6 had been arrested and in jail for marijuana possession.  As a result, the state explained, she might "think that the situation is not that serious," identify with the defendant or have some bias based on the fact that she had been to jail.  The state also noted the prospective juror's "profession" and the fact that she had recently engaged in "teen [sic] building exercises" as a reason for choosing to exclude her.  Finally, the state indicated

that "[w]e just didn't like the vibe and the impression that we got from her."  The trial court found the state's explanation to be race-neutral and not pretextual and, once again, overruled May's objection and excused prospective juror No. 6.

{¶48} The state argues, at the outset, that May failed to establish a prima facie case of discrimination because (1) the use of a peremptory challenge to strike the sole African-American juror on the panel does not in and of itself support an inference of racial discrimination and (2) it was not clear from the record whether prospective juror No. 6 was, in fact, a racial minority.  However, we need not decide that issue because "'[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.'"  *Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d 1310, quoting *Hernandez*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395.[2]  Even assuming May had established a prima facie case of racial discrimination (such that the burden shifted to the state), we find that the record supports the trial court's determination that (1) the state met its burden by providing legitimate, race-neutral explanations for its decisions to excuse prospective juror Nos. 5 and 6, in light of the particular biases it believed these

---

[2]We note, however, that the existence of a pattern of discriminatory strikes is not a prerequisite to prevailing on a *Batson* challenge.  *See, e.g., White*, 85 Ohio St.3d at 436, 709 N.E.2d 140.  "Such a rule would license prosecutors to exercise one illegal peremptory strike per trial. The law of equal protection does not allow 'one free bite.'"  *Id.*

individuals may have had based on their experiences and (2) the state did not exercise its peremptory challenges with discriminatory intent.

**{¶49}** May argues that the state's explanation that prospective juror No. 5 had a 25 year-old son and, therefore, might identify with the defendant was not a legitimate race-neutral explanation for excusing prospective juror No. 5 because her son was a chef, not a person confined to a correctional institution, and because "other (white) jurors" who were not stricken had children who were the same age as May or were themselves the same age as May. May, however, completely ignores the other reason the state gave for seeking to excuse prospective juror No. 5 — that she had a family member who had been in prison. The record reflects that prospective juror No. 5 indicated during voir dire that she had a brother who had been in prison, that she had communicated with him while he was in prison and that he had conveyed to her that his experience in prison "wasn't good at times." The state indicated that these facts together led to its decision to excuse prospective juror No. 5.

**{¶50}** With respect to prospective juror No. 6, May claims that the trial court erred in accepting the state's explanation as race-neutral based on the state's comment that it did not like the "vibe" of the prospective juror. Once again, however, May focuses on only one part of the explanation the state provided for its decision to strike prospective juror No. 6 and ignores the state's concern that the prospective juror may have a bias based on her own prior experience with the criminal justice system.

{¶51} Courts have previously recognized that the potential bias that may result from a prospective juror's or his or her family's experiences with the criminal justice system may be a legitimate, racially neutral reason for exercising a peremptory strike against the prospective juror. *See, e.g., State v. King,* 1st Dist. Hamilton No. C-060335, 2007-Ohio-4879, ¶ 30 ("A prior criminal conviction of a prospective juror or a family member of the prospective juror can serve as a valid, race-neutral reason to remove a juror, even if the conviction is not recent."); *State v. Lacey,* 7th Dist. Mahoning No. 10 MA 122, 2012-Ohio-1685, ¶ 127 ("'Removing a juror based on the past criminal history of him or her, or his or her family member, is a valid, race-neutral reason for raising a peremptory challenge.'"), quoting *State v. Santiago*, 10th Dist. Franklin No. 02AP-1094, 2003-Ohio-2877, ¶ 10; *State v. Harris*, 7th Dist. Jefferson No. 04 JE 44, 2006-Ohio-3520, ¶ 18 (state gave a race-neutral reason for peremptorily striking prospective juror where her son and sister had extensive contact with the criminal justice system and the prosecutor did not believe her assurance that this would not affect her ability to decide the case); *see also State v. Conner*, 8th Dist. Cuyahoga No. 84073, 2005-Ohio-1971, ¶ 28-29 (race-neutral basis for exclusion of prospective juror existed where several family members had been convicted of drug offenses and state stated it had doubts concerning prospective juror's ability to serve as a fair and impartial juror). The record reflects that the trial court did not simply take the state's purported "race-neutral" explanations at face value but rather, probed the prosecutor's proffered explanations in order to evaluate their credibility, ultimately finding them to be credible and not

pretextual.   The trial court was in the best position to weigh the credibility of the state's explanations in determining whether the state exercised its peremptory challenges with a discriminatory intent.   Following a thorough review of the record, we cannot say that the trial court's decision to allow the state to exercise its peremptory challenges was clearly erroneous.   May's fifth assignment of error is overruled.

### Timing of *Howard* Charge

{¶52} In his sixth and final assignment of error, May argues that the trial court abused its discretion in giving the jury a *Howard* instruction at 4:30 p.m. rather than waiting until the following morning.   May contends that by giving the instruction at the end of the day, the trial court "coerced the jury to come to a decision" as evidenced by the fact that they returned a verdict five minutes after the instruction was given.

{¶53} "Where it appears to a trial court that a jury is incapable of reaching a consensus, the court, in its discretion, may make a last-ditch effort to prod the jury into reaching a unanimous verdict so long as its instructions are balanced, neutral, and not coercive."   *State v. King*, 8th Dist. Cuyahoga No. 99319, 2013-Ohio-4791, ¶ 24, citing *State v. Howard*, 42 Ohio St.3d 18, 24, 537 N.E.2d 188 (1989).   It is within the discretion of the trial court whether and when to give a *Howard* instruction.   "There is no formula or required period of time a trial court must wait before issuing a *Howard* instruction*."   King* at ¶ 26, citing *State v. Shepard*, 10th Dist. Franklin No. 07AP-223, 2007-Ohio-5405, ¶ 11-12, and *State v. Morgan*, 8th Dist. Cuyahoga No. 97934, 2012-Ohio-4937.

{¶54} May raised no objection to the *Howard* instruction or the timing of the *Howard* instruction below.  Accordingly, he waived all but plain error.  *See, e.g., State v. Hassan*, 10th Dist. Franklin No. 12AP-626, 2013-Ohio-2071, ¶ 29; *State v. Townsend*, 8th Dist. Cuyahoga No. 87521, 2006-Ohio-5457, ¶ 25; *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  To demonstrate plain error, the defendant must show "an error, i.e., a deviation from a legal rule," that was "an 'obvious' defect in the trial proceedings" and that the error "affected a substantial right," i.e., a "reasonable probability" that the error resulted in prejudice, affecting the outcome of the trial.  *State v. Rogers*, Slip Opinion No. 2015-Ohio-2459, ¶ 22; *Barnes* at 27.  "We recognize plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"  *Lyndhurst v. Smith*, 8th Dist. Cuyahoga No. 101019, 2015-Ohio-2512, ¶ 32, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110, 559 N.E.2d 710 (1990).

{¶55} Based on our review of the record, we cannot say that the trial court abused its discretion or committed plain error in giving a supplemental *Howard* instruction at 4:30 p.m. rather than the following morning.  Although it was late in the day, there is nothing in the instruction the trial court gave to the jury that would suggest it coerced them into a guilty verdict.  The instruction is balanced and neutral.  It does not rush the jury to come to a verdict, but rather encourages the jurors to continue debating and for

both sides to re-examine their positions and attempt to come to a consensus. May's sixth assignment of error is overruled.

**{¶56}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR