[Cite as *State v. Machuca*, 2016-Ohio-5833.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103397

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EMANUEL MACHUCA

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588583-A

**BEFORE:** Celebrezze, J., Jones, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 15, 2016

**ATTORNEY FOR APPELLANT**

Jeffrey Froude
P.O. Box 771112
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Jeffrey Schnatter
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, Emanuel Machuca, appeals his rape, sexual battery, and abduction convictions arguing that the rape convictions were not supported by sufficient evidence, were against the manifest weight of the evidence, that cumulative errors resulted in an unfair trial, and that the trial court erred in accepting guilty pleas for sexual battery and abduction in a separate incident. After a thorough review of the record, this court affirms.

## I. Factual and Procedural History

**{¶2}** A jury trial began on May 13, 2015. The victim testified about her experiences on July 12, 2014. She testified that she wanted to go to a bar to watch a boxing match. She invited her friend N.A. N.A. did not want to go, but agreed to drop her off at the bar. N.A. dropped the victim off around 10:00 p.m. Once there, the victim met up with a female friend that agreed to give her a ride home at the end of the night. The victim spent the rest of the night at the bar talking to people. She began talking to a group of people that she vaguely recognized from high school. This group included Juan Soto. Soto bought the victim a beer. When the victim was ready to leave, she could not find her friend who agreed to give her a ride, so she asked Soto for a ride. He told her about an "after-party" with people from their high school, and she agreed to go there with Soto, appellant, and another individual.

**{¶3}** After stopping at a gas station, the group arrived at the home of someone the victim knew from high school. There were a few people at the house, but the victim

thought this would be a brief stop on the way to the after-party. Once inside, Soto and appellant invited the victim into a bedroom off the kitchen. She went willingly with the two. Once inside, Soto prepared the victim a clear drink containing alcohol. The victim drank it quickly. She testified after that, she felt strange. Next, Soto produced a bag of cocaine and put some on a small table in the room. He nasally ingested some of the powder and then moved the table closer to the victim and moved her head down to the table. She breathed in cocaine. Soto then placed some on his finger and held it up to her nose. She again breathed in the cocaine.

{¶4} She testified she felt different and had trouble remembering what occurred. She remembered leaving the house with Soto to go to what she thought would be the after-party. Instead, she was taken to a second, unknown house. She remembered going inside. She also remembered waking up to appellant and Soto raping her. The victim also testified there was a third male there, but she did not know if he participated in the rape. Afterward, Soto dropped the victim off near N.A.'s house.

{¶5} N.A. testified she woke up to someone screaming her name from outside her apartment at approximately 5:00 a.m. N.A. went out and found the victim crying. The victim exclaimed that she had been raped. N.A. called the victim's mother and was instructed to take the victim home. The victim continued to weave in and out of consciousness, and N.A. tried to keep her awake while on the way to the victim's home. Once there, the victim and her mother had an argument, but N.A. testified that the victim was still in and out of consciousness. N.A. put the victim in the shower with her clothes

on in an attempt to wake her up. The victim's mother then called police.

{¶6} The victim was taken by ambulance to the hospital where a sexual assault examination was conducted by a sexual assault nurse examiner ("SANE"). DNA swabs were collected and blood and urine samples were taken because the victim initially reported that someone put something in her drink. Those blood and urine samples revealed only alcohol and cocaine in the victim's system. DNA samples collected at that time were consistent with appellant's DNA, but not Soto's.

{¶7} The victim told investigating police officers that one of the men she initially identified as "Jose" put his phone number into her phone. Officers contacted this person and found his name was Juan Soto.

{¶8} Appellant and Soto were arrested and each was charged with three counts of rape, violations of R.C. 2907.02(A)(2); three counts of rape, violations of R.C. 2907.02(A)(1)(a); and one count of kidnapping, a violation of R.C. 2905.01(A)(4). Appellant was also charged in the same indictment with counts related to a separate incident when his DNA returned a match in a national DNA database to an unsolved 2010 rape case. He was charged with one count of rape, a violation of R.C. 2907.02(A)(2), and one count of kidnapping, a violation of R.C. 2905.01(A)(4). This separate incident was alleged to have occurred on July 24, 2010. Soto and appellant were tried together for the 2014 rape, but the charges from the 2010 allegations proceeded separately.

{¶9} After the trial concluded, the jury found appellant guilty of two counts of rape and not guilty of the remaining charges that stemmed from the 2014 incident. Following

those findings of guilt, to resolve the allegations related to the 2010 incident, appellant pled guilty to one count of sexual battery, a violation of R.C. 2907.03(A)(2), and one count of abduction, a violation of R.C. 2905.02(A)(1).

{¶10} At a combined sentencing hearing on July 1, 2015, the court merged the sexual battery and abduction charges related to the 2010 incident, and the state elected to have appellant sentenced for sexual battery. The court imposed an aggregate six-year sentence. Appellant received six-years imprisonment on each count of rape, and three years for sexual battery. Appellant was labeled a Tier III sex offender and informed of postrelease control. After the court denied a motion for new trial, appellant filed the instant appeal assigning four errors for review:

> I. The jury erred in finding guilt, and the trial court erred in denying Crim.R. 29 Motions for acquittal as the state failed to prove each element of [R.C.] 2907.02(A)(1)(a).
>
> II. The jury erred in finding guilt and the trial court erred in denying Crim.R. 29 Motions for acquittal as these decisions are against the manifest weight of the evidence.
>
> III. The trial judge erred in failing to protect the defendant and even participated in the massive, pervasive and prejudicial atmosphere that attended this prosecution.
>
> IV. The trial judge erred in accepting a guilty plea made under duress.

## II. Law and Analysis

### A. Sufficiency

{¶11} Appellant first argues that his rape convictions are not supported by sufficient evidence and that the trial court should have granted his Crim.R. 29 motions.

Those arguments rely on the same standard of review and require the same analysis. *State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 15 (8th Dist.), citing *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13.

{¶12} A challenge that a criminal conviction is unsupported by sufficient evidence requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). This court determines "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. An appellate court does not assess the credibility of the state's evidence, but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins*; *Jenks* at paragraph two of the syllabus.

{¶13} R.C. 2907.02(A)(1)(a) provides,

[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [f]or the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled

substance to the other person surreptitiously or by force, threat of force, or deception.

{¶14} The evidence adduced at trial indicates that appellant did not administer any drug or intoxicant to the victim. The victim testified that Soto was the one that gave her alcohol and cocaine. In its brief, the state seems to argue that appellant was complicit in the administration of the means of impairment and the deceptions by which they were administered.

{¶15} Appellant was with Soto and the victim the entire evening. Both informed the victim at various times that they were going to take her to an after-party where friends from high school were gathered. In reality, there was no after-party and Soto and appellant coordinated their efforts to get the victim intoxicated to the point of blacking out and then took her to a third unknown location where they engaged in multiple sex acts, including oral, anal, and vaginal intercourse. The only time appellant was not with Soto and the victim was when he traveled from the first house to the second house separately, but they all arrived at that location, indicating coordination. While it was Soto that gave the victim alcohol and cocaine, sufficient evidence exists of coordination between Soto and appellant. Both participated in a scheme to deceive the victim into believing they were going to a party while at the same time administering drugs and alcohol to diminish the victim's ability to resist.

{¶16} R.C. 2923.03(A) provides, in pertinent part: No person, acting with the kind of culpability required for the commission of an offense, shall do any of the

following: * * * (2) Aid or abet another in committing the offense.

{¶17} The idea of applying a complicity theory to rape is not novel. *See State v. Williams*, 9th Dist. Lorain No. 02CA008112, 2003-Ohio-4639; *State v. Merryman*, 9th Dist. Lorain No. 02CA008109, 2003-Ohio-4528. Therefore, if the state was able to show that appellant aided or abetted Soto in the administration of a drug or intoxicant by threat or deception for the purposes of impairing her ability to resist, he could be found guilty of rape under R.C. 2907.02(A)(1)(a).

{¶18} Viewing this evidence in a light most favorable to the state as we must, the above analysis indicates there is sufficient evidence of the elements of the crime for which appellant was found guilty. Appellant's first assignment of error is overruled.

### B. Manifest Weight

{¶19} Appellant next argues that his rape convictions are against the manifest weight of the evidence.

{¶20} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented, and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court

must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶21} In conducting such a review, this court remains mindful that the credibility of the witnesses and the weight given to evidence are primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner, demeanor, gestures and voice inflections, in determining whether the proffered testimony is credible. *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶22} Appellant attacks the credibility of the victim by highlighting variations in her statements given to police shortly after the incident was reported, and her trial testimony. The victim initially reported that someone slipped something in her drink. The toxicology evidence indicated that did not occur. Appellant's larger argument is that the victim made up the rape because she was out all night and did not want to get in

trouble with her mother. There is little, other than conjecture, to support that argument.

{¶23} There is some evidence that suggests the victim in this case was drinking some alcohol prior to going to the bar. N.A. testified that when the victim arrived at N.A.'s house, there was a bottle of half-consumed alcohol in the console of the victim's car. N.A. assumed the victim had been drinking it. However, N.A. testified the victim did not seem intoxicated when N.A. dropped her off at the bar. Further, N.A. testified that the victim did not drink alcohol in high school and that N.A. had never seen the victim drink or do drugs. Based on the evidence adduced at trial, the victim was not intoxicated prior to going to the bar or when she left the bar. It was only after Soto gave her an unknown drink and cocaine that she was intoxicated to a significant degree.

{¶24} Appellant also attacks the credibility of the victim by pointing out that the dress the victim was wearing was provocatively short. This argument is devoid of merit.

{¶25} Taking the evidence adduced at trial in its entirety, this court cannot say that this is the exceptional case where the jury clearly lost its way when it convicted appellant of rape. Therefore, this assigned error is overruled.

## C. Structural Error

{¶26} Appellant claims numerous errors that went without objection so severely prejudiced him that he was deprived of a fair trial. Appellant essentially alleges a cumulative plain error analysis, but couched as structural error.

> Structural errors are constitutional defects that defy analysis by harmless-error standards because they affect the framework within which

the trial proceeds, rather than simply being an error in the trial process itself. Such errors permeate the entire conduct of the trial from beginning to end so that the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. A structural error mandates a finding of per se prejudice.

*State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 20, *overruled on other grounds, State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26.

**{¶27}** Appellant asserts that rape trials have been so tilted in favor of female victims that rape defendants, including appellant, cannot receive a fair trial. This type of structural error, he argues, must be corrected through legislative and judicial reforms.

**{¶28}** Before addressing this argument, this court must note errors that were not brought to the trial court's attention by objection are waived. This court will examine them to determine whether the allegations rise to the level of plain error. *State v. Thompson*, 2d Dist. Montgomery No. 22984, 2010-Ohio-1680, ¶ 149; Crim.R. 52(B). "Plain error does not exist unless, but for the error, the outcome of Defendant's trial would clearly have been different; that is, he would not have been convicted." *Id*., citing *State v. Coben*, 2d Dist. Greene No. 2001 CA 8, 2002-Ohio-914.

**{¶29}** Further,

The Ohio Supreme Court has admonished trial courts to apply "structural error" with caution. Structural error must put into question the reliability of the trial court in serving its function as a vehicle for the determination of guilt or innocence. *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 24; *see also Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 21. Where a defendant is tried by an impartial adjudicator, there is a strong presumption that constitutional errors are subject to a harmless error analysis, i.e., they are not structural. *Wamsley,*

supra, at ¶ 16.

*Id*. at ¶ 193.   In that same vein, the Ohio Supreme Court has also cautioned appellate courts against applying a structural error analysis where the case would otherwise be governed by plain error because the error or errors were not raised in the trial court. *State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (2001).

{¶30}  Appellant first alleges that having a panel of jurors that consisted of 11 women and 1 man deprived him of a fair trial.  *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).   Appellant did not make a challenge to the makeup of the jury below.   In fact, appellant's trial counsel indicated satisfaction with the chosen jury, and the makeup of the jury was much appellant's decision.   Counsel for appellant and Soto used peremptory challenges to remove five potential male jurors, while the state used challenges to remove three potential male jurors, four potential female jurors, and one potential juror of an unspecified gender.   Appellant has offered nothing to indicate that a majority female jury could not fairly adjudicate appellant's guilt.   This court finds no plain error in this regard.   Further, appellant did not allege a *Batson* issue below and does not point to any improper exercise of a peremptory challenge by the state now.

{¶31}  Appellant also argues that the language used in the rape statute and in court was so prejudicial that it deprived him of a fair trial.   Appellant points to the fact that the statute refers to the victim as the "victim" and the perpetrator as the "offender" as a sign that he did not receive a fair trial.   He also takes issue with the fact that a "sexual assault" nurse examiner and detective from the "sexual assault and child victim unit"

testified. In no instance does appellant point to any prejudice that resulted. Nothing is offered to indicate that any of this made a difference at appellant's trial. Also, at no time does appellant point out any case law to support his position. Plain error does not exist here.

{¶32} Appellant asks this court to declare the rape statute unconstitutional because its use of certain terminology allegedly prejudiced him. Again, appellant does not point to any prejudice, case law, or even set forth a proper standard or argument necessary for this court to find a statute unconstitutional. Appellant does not indicate whether he is challenging the statute facially or as applied to his case. Plain error does not exist here.

{¶33} There is no structural error that permeated trial. The trial court and the jury acted as a neutral arbiter. The trial court made several important rulings in appellant's favor. Further, there is no evidence that the jury did not act as an impartial arbiter when it found appellant not guilty of several charges and guilty of two counts of rape. Appellant's third assignment of error is overruled.

### D. Involuntary Pleas

{¶34} Appellant finally argues that his insufferably unfair trial caused him to enter guilty pleas to additional charges of sexual battery and abduction regarding a separate victim for the incident that occurred in 2010.

{¶35} Appellant does not support this assigned error with any case law, citation to the record, or citation to statutes or authority for the proposition assigned. This court will therefore not address it. App.R. 12(A)(2); App.R. 16(A)(7).

### III. Conclusion

{¶36} Appellant's convictions for rape are supported by sufficient evidence and are not against the manifest weight of the evidence. There was no structural error at trial even if we were to apply that analysis when plain error review is more appropriate. Finally, appellant does not set forth a proper argument that his pleas to sexual battery and abduction were not knowingly, intelligently, and voluntarily entered. Therefore, this court will not address that assigned error.

{¶37} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

LARRY A. JONES, SR., A.J., and
MELODY J. STEWART, J., CONCUR